UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

v.                                                  Case No. 18-20834
                                                    Honorable Victoria A. Roberts

JUAN GADSON,

    Defendant.
_____/

## ORDER DENYING DEFENDANT'S MOTIONS TO SUPPRESS EVIDENCE [ECF Nos. 26, 27]

**I.   INTRODUCTION**

This case stems from the execution of a search warrant on 85/87 Edgevale Street in Detroit, Michigan, as part of an investigation into a drug overdose death in November 2018.

Defendant Juan Gadson is charged in a three-count indictment with being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1); possession with intent to distribute "crack" cocaine in violation of 21 U.S.C. § 841(a)(1); and possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c).

Before the Court are Gadson's amended Motion to Suppress Evidence Based on an Invalid Search Warrant [ECF No. 26] and his amended Motion to Suppress Evidence Based on Illegal Arrest, Search, and Seizure [ECF No. 27].

Gadson's motions to suppress are **DENIED**.

**II.  BACKGROUND**

    **A. The Investigation, Affidavit for Search Warrant, and Search Warrant**

The affidavit for search warrant details the investigation.

The investigation began at the apartment of a deceased male in early November 2018. He was found with small baggies containing a white substance. The responding officer suspected it to be heroin/fentanyl. Sergeant J. Torolski, the affiant, then took over the investigation. Torolski prepared and swore to the affidavit for search warrant.

Sergeant Torolski questioned the victim's live-in girlfriend. She said the victim was a heroin addict who recently relapsed. She said she recently confronted him when she observed him to be high; he then turned over five packs of heroin that she flushed down the toilet. She said the heroin was packaged in small pink/reddish baggies.

Sergeant Torolski then spoke to an anonymous source (the "anonymous source") who had purchased heroin from 85/87 Edgevale on numerous occasions. The anonymous source provided detailed information about the victim's and his/her own use of heroin and about the packaging of heroin. The anonymous source provided a detailed description of the Edgevale location and the black female who sells heroin there, stating that the sales are in the lower flat, but the seller accesses the upper flat to get more heroin. Using police databases, officers were able to identify the black female as "G.C."; she provided the Edgevale address as hers in a recent police report.

Within 48 hours of the application for the search warrant, an undercover officer worked with a confidential informant (the "CI") to conduct a controlled buy of heroin from G.C. at 85/87 Edgevale. The CI had purchased heroin from 85/87 Edgevale multiple times in the past. Before conducting the controlled buy, the officer showed the CI a current photo of G.C., and the CI positively identified G.C. as the person he/she had purchased heroin from on multiple occasions.

The undercover officer was provided with an amount of pre-recorded funds to conduct the controlled buy. The officer and the CI then conducted the controlled buy: (1) the officer searched the CI for money and/or drugs, which was negative; (2) the officer drove the CI to 85/87 Edgevale in an undercover car and gave him/her the pre-recorded funds; (3) the CI exited the car and entered 85 Edgevale, the lower flat; (4) a few minutes later, the CI left the residence and entered the car; (5) the officer and CI drove to a pre-arranged location, and the CI turned over packets of heroin in pink/clear baggies which the CI said he/she purchased inside 85 Edgevale with the pre-recorded funds; (6) the officer searched the CI for money and/or drugs, which was negative; and (7) the undercover officer transported the suspected heroin back to the police station where it was field tested. The field test was inconclusive for heroin but positive for fentanyl.

While the CI was inside, the undercover officer observed an unusual amount of short stay pedestrian traffic, activity consistent with drug distribution. Specifically, the officer indicated that during the 5-10 minutes he was there, he observed four individuals walk up to 85/87 Edgevale, enter the location, then exit and depart the area after only a few minutes.

Sergeant Torolski concludes the affidavit for search warrant stating he believes a search of 85/87 would yield narcotics and other evidence of narcotics trafficking. At the time of the affidavit, Sergeant Torolski had over 23 years of experience investigating various criminal cases; he summarized his knowledge of drug distribution operations, gained through experience and training, in the affidavit.

A Wayne County District Judge signed the underlying search warrant on November 29, 2018, finding that probable cause existed for the search of 85/87 Edgevale based on the affidavit for search warrant.

**B. The Search and Gadson's Arrest**

Officers executed the search warrant on 85/87 Edgevale at approximately 8:00 a.m. on November 30, 2018. The following account is set forth in the criminal complaint.

Upon entering the home, officers observed Gadson run from the dining room area, down a hallway, and into a bathroom. As officers followed Gadson down the hallway, they heard what they believed to be a gun hitting the floor of the bathroom. After a brief time, Gadson exited the bathroom and was detained.

Officer Compton entered the bathroom and found a loaded gun magazine on the floor and a 9mm handgun – loaded with one round – in a partially opened cabinet drawer. A LEIN check later showed that the gun was stolen. No other individuals were in the bathroom.

Gadson was then placed under arrest. Officer Compton searched Gadson and found 31 individual packets of crack cocaine in his pants pocket.

Gadson disputes the officers' claim that he ran into the bathroom, but he does not set forth a counterstatement of facts or describe his account of what occurred.

**C.    Procedural History**

A criminal complaint was filed on November 30, 2018. On December 20, 2018, a grand jury returned the indictment charging Gadson with the three offenses set forth above.

Gadson moves to suppress the evidence based on an invalid search warrant and an illegal arrest, search, and seizure. The motions are fully briefed; no hearing is necessary.

## III. ANALYSIS

The Fourth Amendment protects against unreasonable searches and seizures. U.S. Const. amend. IV ("The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."). Officers must base an arrest and search on probable cause and execute a search with a valid warrant. *See Katz v. United States*, 389 U.S. 347, 357 (1967).

### A. Motion to Suppress Evidence Based on an Invalid Search Warrant [ECF No. 26]

#### 1. Whether Gadson Has Standing to Challenge the Search

Gadson summarily states in his motion that he "has standing to contest the search warrant [because] he was an invited overnight guest at the residence."

In *Minnesota v. Olson*, 495 U.S. 91 (1990), the Supreme Court held that a defendant's "status as an overnight guest is . . . enough to show that he had an expectation of privacy in the home that society is prepared to recognize as reasonable." *Id.* at 96-97. However, the Supreme Court later held that a person present in another's home not as an overnight guest, but only for the commercial purpose of packaging drugs for sale, did not have a legitimate expectation of privacy. *Minnesota v. Carter*, 525 U.S. 83, 90-91 (1998).

The government argues that Gadson lacks an expectation of privacy in the residence and cannot challenge the search. The government says there is no evidence to support Gadson's claim that he was an overnight guest. Moreover, considering that drugs were being sold from the Edgevale residence and Gadson had a firearm and 31 individual packets of crack cocaine on his person, the government contends it is reasonable to conclude that Gadson was at Edgevale to distribute drugs, not as an overnight guest.

In his reply brief, Gadson says: (1) he knew G.C., the principal occupant of 85/87 Edgevale; (2) he had spent the night at Edgevale in the past; and (3) on November 29 and 30, 2018, he was an invited and overnight guest at G.C.'s home.

While Gadson summarily claims he was an overnight guest and that he had a relationship with G.C., he presents no evidence to support his statement. He fails to say whether he kept any clothes or personal belongings at Edgevale for his overnight stays or if he packed anything specifically for his two-night stay on November 29 and 30. *See United States v. Anderson*, 273 F. Supp. 2d 921, 931 (E.D. Mich. 2003) ("[T]here is no evidence that Defendant was an overnight guest at the Kleinpell residence. Defendant kept no clothes or possessions there. . . ."). Like the defendant in *United States v. Delgado*, 121 F. Supp. 2d 631 (E.D. Mich. 2000), Gadson should have attached an affidavit to his reply brief setting forth further facts and/or evidence that supports that he was an overnight guest. *Id.* at 635.

On the briefs, it appears that Gadson fails to demonstrate that he was an overnight guest at 85/87 Edgevale. However, because the Court is not holding a hearing – at which Gadson would be entitled to testify and further develop this issue –

6

and because the Court ultimately finds that the search was lawful and supported by probable cause, the Court assumes, without deciding, that Gadson has standing to challenge the search.

## 2. Probable Cause Supports the Search Warrant

Gadson argues that the search was illegal because probable cause does not support the search warrant. He says all evidence obtained – i.e., the gun and drugs – was a product of the illegal search and must be suppressed.

The government says Gadson's motion must be denied because the search warrant sufficiently establishes probable cause. The Court agrees.

"A basic principle of the Fourth Amendment is that there must be probable cause for a search warrant to issue." *United States v. Helton*, 314 F.3d 812, 819 (6th Cir. 2003). The Sixth Circuit explained that probable cause for a search warrant "exists when there is a 'fair probability,' given the totality of the circumstances, that contraband or evidence of a crime will be found in a particular place." *Id.* (citations omitted); *see also Illinois v. Gates*, 462 U.S. 213, 238 (1983); *United States v. Carpenter*, 360 F.3d 591, 594 (6th Cir. 2004) ("To justify a search, the circumstances must indicate why evidence of illegal activity will be found 'in a particular place.' There must, in other words, be a 'nexus between the place to be searched and the evidence sought.'").

"[W]here an affidavit is the basis for a probable cause determination, that affidavit 'must provide the magistrate with a substantial basis for determining the existence of probable cause.'" *Helton*, 314 F.3d at 819 (quoting *Gates*, 462 U.S. at 239). "When determining whether an affidavit establishes probable cause, we look only to the four corners of the affidavit." *United States v. Rodriguez–Suazo*, 346 F.3d 637, 648 (6th Cir.

2003). However, "rather than [conducting] a line-by-line scrutiny," the Court reviews the sufficiency of the affidavit based on the "totality of the circumstances." *United States v. Greene*, 250 F.3d 471, 479 (6th Cir. 2001). The Court must afford great deference to an issuing judge's probable cause determination. *United States v. Allen*, 211 F.3d 970, 973 (6th Cir. 2000) (en banc). Indeed, the Sixth Circuit "has long held" that an issuing judge's decision to grant a search warrant "should only be reversed if it was arbitrarily exercised." *Id.*

Gadson says probable cause does not support the search warrant because: (1) there is insufficient information regarding the credibility or reliability of the informant and very little meaningful corroborative information from the police officers; and (2) the affidavit does not establish a nexus between 85/87 Edgevale and ongoing criminal activity.

To support those arguments, Gadson says the search warrant does not contain any recitation that, among other things: (1) officers had determined that ongoing criminal activity was occurring at 85/87 Edgevale and drugs were stored at the residence; (2) the affiant swore that the informants were credible and reliable; (3) there had been community complaints regarding drug dealing at the target location; and (4) there was electronic monitoring of the controlled buy.

Gadson's arguments lack merit. First, although the affidavit does not provide information regarding the reliability of the anonymous source or CS, it does contain sufficient corroborating information that allowed the issuing judge to conclude that their information was reliable, which is all that is necessary.

8

When an affidavit relies on information from a confidential informant or an anonymous source, the Court "must consider the veracity, reliability, and the basis of knowledge for that information as part of the totality of the circumstances for evaluating the impact of that information." *Helton*, 314 F.3d at 819. If "the issuing judge can conclude independently that the information is reliable, an affidavit based on the informant's tip will support a finding of probable cause." *United States v. Ray*, 803 F.3d 244, 275 (6th Cir. 2015). For example, an affidavit that includes a tip from a historically reliable informant may support a finding of probable cause absent any corroboration. *See United States v. Woosley*, 361 F.3d 924, 927 (6th Cir. 2004). Alternatively, an affidavit that lacks information concerning an informant's reliability may support a finding of probable cause "if it includes sufficient corroborating information." *Ray*, 803 F.3d at 275; *United States v. Coffee*, 434 F.3d 887, 894-95 (6th Cir. 2006).

Both the anonymous source and CI stated they had purchased heroin from Edgevale numerous times in the past, and they each provided detailed information regarding the location and the person from whom they purchased the drugs, G.C. These two sources corroborated each other's information. The officers then substantiated their information through investigation.

The officers reviewed a recent police report in which G.C., who matched the description of the seller, listed Edgevale as her address. The police then confirmed that G.C. was the seller by obtaining a current photo of her and showing it to the CI; the CI positively identified G.C. as the person he/she purchased heroin from in the past at 85/87 Edgevale. Most significantly, the officers corroborated the information from the CI and anonymous source by conducting a controlled drug buy similar to the officers in

9

*Coffee*. *See id.* at 894. In addition, while conducting surveillance of 85/87 Edgevale, the undercover officer observed activity consistent with the sale of narcotics, further corroborating the information from the CI and anonymous source.

Under the totality of circumstances, the affidavit adequately corroborated the information from the CI and anonymous source, and it did so in a manner endorsed by the Sixth Circuit. *See Coffee*, 434 F.3d at 894-95 (concluding that the informant's reliability was sufficiently corroborated based on a controlled drug purchase and rejecting defendant's claim that the warrant affidavit did not establish probable cause). Gadson's first argument fails.

Gadson's second argument – i.e., that the affidavit does not establish a nexus between 85/87 Edgevale and ongoing criminal activity – also lacks merit. "The critical element in a reasonable search is . . . [whether] there is reasonable cause to believe that the specific 'things' to be searched for and seized are located on the property to which entry is sought." *Zurcher v. Stanford Daily*, 436 U.S. 547, 556 (1978).

Based on the totality of circumstances, there was reasonable cause to believe illegal drugs would be located at 85/87 Edgevale. As summarized above, the anonymous source and confidential informant said they had purchased heroin from G.C. several times in the past at Edgevale. They told officers she sold heroin out of the lower flat but that she would sometimes access the upper unit to get more heroin. Within 48 hours of the issuance of the warrant, officers conducted a controlled buy, during which the CI purchased heroin/fentanyl from G.C. at 85 Edgevale. At that time, the undercover officer observed activity at the location that was consistent with drug

10

distribution. The affidavit established a nexus between 85/87 Edgevale and narcotics distribution. Probable cause supported the search warrant.

Gadson's Motion to Suppress Evidence Based on an Invalid Search Warrant [ECF No. 26] is DENIED.

### B. Motion to Suppress Evidence Based on Illegal Arrest, Search and Seizure [ECF No. 27]

#### 1. Officers Had Probable Cause to Arrest Gadson

In his second motion, Gadson argues that the officers violated his Fourth Amendment rights when they arrested and subsequently searched him because they did not have "probable cause or articulable suspicion that he was engaged in criminal activity at the time of his arrest." He says the Court must suppress all evidence obtained as fruit of an illegal search and seizure.

The government says Gadson's motion must be denied because officers had probable cause to arrest him. The government makes alternative arguments as well; however, it is not necessary to address those arguments because the Court finds that the officers had probable cause to arrest Gadson.

"[A] warrantless arrest by a law officer is reasonable under the Fourth Amendment where there is probable cause to believe that a criminal offense has been or is being committed." *See Devenpeck v. Alford*, 543 U.S. 146, 152 (2004). "Probable cause is defined as 'reasonable grounds for belief, supported by less than prima facie proof but more than mere suspicion.'" *United States v. Ferguson*, 8 F.3d 385, 392 (6th Cir. 1993) (citation omitted). "[T]he establishment of probable cause 'requires only a probability or substantial chance of criminal activity, not an actual showing of such activity.'" *United States v. McClain*, 444 F.3d 556, 562-63 (6th Cir. 2005) (quoting

*Gates*, 462 U.S. at 243 n.13). "[T]he police must have an 'objectively reasonable basis for their belief' that a crime is being committed." *Id.* at 563 (citation omitted).

When officers entered the house with a search warrant, they observed Gadson running down the hallway into the bathroom, and they heard what sounded like a gun hitting the floor. Considering they were executing a search warrant on a drug house, the officers could have reasonably perceived those actions as "gestures indicative of criminal conduct" and/or "movements that might suggest an attempt to conceal contraband." *See Ybarra v. Illinois*, 444 U.S. 85, 91 (1979). If Gadson would not have acted this way, there likely would not have been a reasonable basis to believe he had committed, was committing, or was about to commit a crime. *See id.* at 90-91 ("Upon entering the tavern, the police did not recognize Ybarra and had no reason to believe that he had committed, was committing, or was about to commit any [criminal] offense. . . . Ybarra made no gestures indicative of criminal conduct, made no movements that might suggest an attempt to conceal contraband, and said nothing of a suspicious nature to the police officers. In short, the agents knew nothing in particular about Ybarra, except that he was present, along with several other customers, in a public tavern at a time when the police had reason to believe that the bartender would have heroin for sale.").

Unlike the defendant in *Ybarra*, when officers entered Edgevale, Gadson fled to the bathroom and attempted to ditch his gun, "gestures indicative of criminal conduct" and/or "movements that might suggest an attempt to conceal contraband."

The totality of circumstances include the following: (i) officers were executing a warrant on a drug house; (ii) upon their entry, Gadson immediately fled to a bathroom,

where drug contraband can be disposed of in the toilet or drains; and (iii) after officers heard what sounded like a gun hitting the floor in the bathroom, they found a gun, which supports a conclusion that Gadson attempted to ditch it (something a person legally carrying a gun would not do). Based on the officers' training and experience, they had an objectively reasonable basis to believe Gadson had committed, was committing, and/or was about to commit a crime. The officers had probable cause to arrest Gadson. *See McClain*, 444 F.3d at 562-63.

Gadson's Motion to Suppress Evidence Based on Illegal Arrest, Search, and Seizure [ECF No. 27] is DENIED.

### 2. An Evidentiary Hearing is Unnecessary

Gadson requests an evidentiary hearing.

"The defendant has the burden of showing that an evidentiary hearing is necessary when the defendant seeks to suppress evidence." *United States v. Prado*, No. 3:16-CR-00099, 2018 WL 5410967, at *3 (W.D. Ky. Oct. 29, 2018) (citing *United States v. Giacalone*, 853 F.2d 470, 482-83 (6th Cir. 1988)). "An evidentiary hearing is required 'only if the motion is sufficiently definite, specific, detailed, and non-conjectural to enable the court to conclude that contested issues of fact going to the validity of the search are in question.'" *United States v. Abboud*, 438 F.3d 554, 577 (6th Cir. 2006) (citation and emphasis omitted). "A defendant must make some initial showing of contested facts before he is entitled to an evidentiary hearing." *United States v. McGhee*, 161 Fed. Appx. 441, 444 (6th Cir. 2005). "Evidentiary hearings on motions to suppress should be granted 'when the defendant alleges sufficient facts which if proven would justify relief.'" *Id.* (citation omitted).

13

Gadson fails to make a sufficient initial showing of contested facts that, if proven, would warrant relief. While Gadson summarily states that he disputes the officers' claim that he ran into and then emerged from the bathroom while they executed the search warrant, he fails to counter their recitation of facts or describe his account of what occurred. Gadson does not allege sufficient facts to warrant an evidentiary hearing. *See McGhee*, 161 Fed. Appx. at 444.

## IV. CONCLUSION

The Court **DENIES** Gadson's motions to suppress.

**IT IS ORDERED**.

> s/ Victoria A. Roberts
> Victoria A. Roberts
> United States District Judge

Dated: June 5, 2019